NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KALIOPI MAKRIS<br><br>     Appellant,<br><br>v.<br><br>AMBOY BANK,<br><br>     Appellee. | Civ. No. 08-2691, 08-2692 (DRD)<br><br><u>O P I N I O N</u> |

*Appearances by:*

STERNS & WEINROTH, P.C.
by: Robert P. Zoller
50 West State Street
Suite 1400
P.O. Box 1298
Trenton, NJ 08607-1298

 *Attorneys for Appellant*

HILL WALLACK, LLP
by: Michael Kahme
202 Carnegie Center
P.O. Box 5226
Princeton, NJ 08543

 *Attorney for Appellee*

**DEBEVOISE, Senior District Judge**

  Appellant Kaliopi Makris brings this action as a challenge to the April 3, 2008, ruling of

the Bankruptcy Court. In its decision, the Bankruptcy Court rejected Appellant's argument that

the attorneys' fees previously awarded to Appellee Amboy Bank ("Amboy") were unreasonable because Appellee allegedly failed to abide by New Jersey's "Foreclosure First" statute, N.J.S.A. 2A:50-22, and refused to grant reconsideration of a prior decision fixing the amount of those fees.

Appellant advances two primary arguments. First, she contends that the Bankrupcty Court erred as a matter of law by holding that the Guaranty Agreement executed by Dr. Benjamin Levine ("Levine") was the primary security for the mortgage loan agreement between the parties ("the Note") and Amboy was therefore entitled to bring an action directly against Levine when Appellant defaulted on her payments. Additionally, Appellant argues that she was not obligated under the terms of the Note to pay attorneys' fees and other expenses related to suits brought to enforce the Guaranty. In response, Amboy argues that the Court abused its discretion by considering Appellant's motion below as one for reconsideration rather than relief from a prior order, and that the motion would have been time-barred if properly considered as a plea for relief from judgment. In the alternative, Amboy argues that the Court correctly held that the Guaranty was the primary security for Appellant's debt and entitled the bank to bring suit against Levine prior to instituting a foreclosure action.

Because the court finds that it was within the Bankrupcty Court's discretion to consider the motion below as a request for reconsideration, Amboy's assertion that the motion was untimely will be rejected. The judgment below will be reversed on the grounds that, under the terms of the Note and Guaranty at issue, Appellant is not responsible for the portion of Amboy's fees attributable to actions undertaken to enforce Levine's Guaranty obligations. The case will be remanded so that the Bankruptcy Court can decide the proper fee allocation.

2

## I.  BACKGROUND

The events giving rise to this appeal began on June 5, 1987, when Amboy agreed to provide Appellant financing for the purchase of her home.  To memorialize that agreement, both parties executed the Note, which stated that Appellant would be responsible for all costs and expenses relating to its enforcement in the event of default.  (Appellee Br., Ex. A ¶ 7(e).)  Appellant and the bank mutually agreed to two modifications to the original Note, neither of which altered the provision regarding attorneys' fees.

The third modification took place after Appellant defaulted on her payments in 2000.  Amboy initially commenced foreclosure proceedings, but later agreed to allow Appellant to keep her home on the condition that she provide additional security for her debt.  Appellant did so by convincing Levine, who was Appellant's employer at the time, to issue a personal Guaranty that he would be liable in the event of default.  Appellant did not sign the Guaranty and was not named as a party to that agreement.

The Guaranty gave Amboy the right to demand payment from Levine without "prior recourse against the Borrower or any other person or persons, or prior resort to any security or other remedy."  (Appellee Br., Ex. L.)  It included seemingly-conflicting provisions relating to attorneys fees, first providing that Levine would pay "all legal and other costs and expenses paid or incurred by the Bank," but later stating that "if any attorney is used, from time to time, to enforce any of the rights herein granted to the Bank to obtain payment of said Liabilities at maturity (expressed or declared) whether by suit or by any other means whatsoever, an attorney's fee of 15% of the principal and interest due on account of said Liabilities shall be added thereto."  (Appellee Br., Ex. L.)  The Guaranty did not include language making Appellant liable for

3

attorneys' fees arising out of actions to enforce Levine's obligations thereunder, and the third modification did not alter the Note's original provision regarding fees and expenses.

Two years after the default that led to the Guaranty agreement, Appellant again fell behind on her payments. Amboy sought payment from Levine. When he refused to cooperate, the bank brought suit in the Superior Court of New Jersey to enforce his obligations under the Guaranty. While that suit was pending, Amboy commenced foreclosure proceedings against Appellant. Rather than risk losing her home to foreclosure, Appellant filed for bankruptcy.

**A.  Litigation Between Amboy and Levine**

Amboy's suit to enforce the Guaranty was the key to a proverbial Pandora's Box of frivolous litigation on the part of Levine. After the Superior Court of New Jersey granted default judgment in favor of the bank, Levine moved to vacate, requested reconsideration, applied for a stay, and attempted to file a $12 million counter-claim against Amboy. Apparently unsatisfied with litigating only in cases to which he was a party, Levine also filed numerous applications in the foreclosure action, and attempted to appeal the judgments in both proceedings to the New Jersey Appellate Division and to this court. As part of his prolific efforts to resist performing on his obligations under the Guaranty, Levine also filed a suit in which he named as defendants Amboy, its general counsel and counsel for Appellant in their personal capacity, and the Clerk of the Superior Court of New Jersey. Finally, he sought to assert various applications in the bankruptcy proceeding below.

At the end of Levine's campaign of frivolous motions and counterclaims, Amboy had amassed attorneys' fees exceeding $80,000; more than 75 percent of the value of the underlying debt. Rather than brave further encounters with Levine, the bank sought payment from Appellant

through application to the Bankruptcy Court.

**B. Bankruptcy Proceedings**

Amboy first served notice of its intent to seek reimbursement from Appellant for fees arising out of the Levine actions in a letter dated June 8, 2005. That document stated the total balance owed to Amboy as $187,016.24. In subsequent correspondence, Amboy acknowledged that the total amount sought included $71,212.48 in attorneys' fees and costs, much of which was "related substantially to the various claims asserted by Dr. Levine." (Appellant Br., Ex. B.)

After receiving Amboy's letters, Appellant filed a motion asking the Bankruptcy Court to decide which of the parties was responsible for incurred as a result of litigation between Amboy and Levine. At an oral hearing on the motion, Appellant's then-counsel presented no legal support for her contention that the terms of the Note did not obligate Makris to reimburse Amboy for fees relating to enforcement of the Guaranty, but argued that it would be inequitable to hold Appellant responsible for those fees. The Bankrupcty Court expressed sympathy for Makris, but held that the terms of the Note did, in fact, render Appellant responsible for fees resulting from litigation between Amboy and Levine. On September 26, 2005, the Court issued an order to that effect ("2005 Order"), stating that "the Court is of the opinion that Amboy is deemed to have a first mortgage lien in this case in the amount of $172,706.20, inclusive of attorneys' fees and costs..." (Appellee Br., Ex. F.)

Before directly attacking the order mandating that she pay Amboy's fees for the Levine actions, Appellant asserted two indirect challenges to the amount of those fees. The first took the form of a motion in which Appellant contended that the increase to her monthly payments that resulted from the addition of Amboy's fees was unreasonable, and argued that those fees should

5

therefore be eliminated.  The Bankruptcy Court denied that motion on June 2, 2006.  Shortly thereafter, Appellant filed a pro se motion[1] asking the court below to reconsider its order increasing the amount of her monthly payments.  The court denied that motion on July 20, 2006.

Appellant did not assert a direct challenge to the 2005 order until September 4, 2007, when she filed a motion requesting relief from the prior fee award.  The arguments advanced in support of that motion were similar to those asserted in the appeal to this court.  Specifically, Appellant contended that (1) Amboy was not entitled to bring an action against Levine prior to foreclosure under New Jersey's "Foreclosure First" statute, N.J.S.A. 2A:50-22, (2) the terms of the Note did not render Appellant responsible for actions undertaken to enforce the Guaranty, and (3) the fees accrued as a result of litigation between Amboy and Levine were excessive.  Amboy argued that the motion, which was styled as a request for relief pursuant to Federal Rule of Bankruptcy Procedure 9024 and Federal Rule of Civil Procedure 60(b), should be denied as untimely.  The bank also contended that it was within its rights to bring suit against Levine prior to foreclosing because this case falls under an exception to the Foreclosure First rule allowing for such suits where a guaranty or collateral other than the home itself is the primary security for a mortgage loan.  See N.J.S.A. 2A:50-2.3(c).

The Bankruptcy Court considered the motion as a request for reconsideration of the 2005 order pursuant to Federal Rule of Bankruptcy Procedure 3008 and 11 U.S.C. § 502(j).  Since such motions can be brought at any time prior to the close of an estate in bankruptcy proceedings, she rejected Amboy's argument that the motion was time-barred.  In its opinion, the Court did

---

[1] Without seeking prior approval from the Bankruptcy Court or providing alternative representation, Appellant's former counsel unilaterally terminated the attorney-client relationship on June 9, 2006.

not address Appellant's argument that she was not obligated under the terms of the Note to pay fees for litigation between Amboy and Levine, but agreed with Amboy that an exception to the Foreclosure First rule applied because the home mortgage was not the primary security for the Note.  Based on that finding, the Bankruptcy Court denied Appellant's motion on April 4, 2008.

## II.  DISCUSSION

Appellant asserts two main arguments before this court.  First, she contends that the Bankruptcy Court erred in finding that the home mortgage was not the primary security for the loan and Amboy was therefore entitled to bring suit against Levine prior to foreclosing.  Appellant also claims that the she should not be held responsible for fees accrued by Amboy in litigation against Levine because the terms of the Note did not require her to pay for suits brought to enforce the Guaranty.  Amboy counters that the Court abused its discretion by considering Appellant's motion below as one for reconsideration rather than relief, and that the motion would have been time-barred if properly considered as a plea for relief from judgment.  Alternatively, Amboy asserts that the fees should be upheld because the Court correctly found that an exception to the Foreclosure First rule applied and the bank was entitled to bring suit against Levine prior to foreclosing on Appellant's home.

**A.  Jurisdiction and Standard of Review**

Appellant challenges the validity of the Bankruptcy Court's 2005 Order fixing the amount of attorneys' fees and the 2008 Order denying reconsideration of those fees.  Because both those orders were final judgments fixing Amboy's rights, this court has jurisdiction pursuant to 11 U.S.C. § 158(a)(1).

On appeal, a bankruptcy court's legal determinations are reviewed de novo.  In re United

Healthcare Sys., Inc., 396 F.3d 247, 249 (3d Cir. 2005). Under that standard, this court gives no deference to the lower court's legal judgments. See Taberer v. Armstrong World Indus., Inc., 954 F.2d 888, 904 (3d Cir. 1992) (articulating standard with respect to review of magistrate judge's legal ruling). Factual findings are reviewed for clear error, United Healthcare, 396 F.3d at 249, and will be disturbed only if they are "completely devoid of a credible evidentiary basis or bears no rational relationship to the supporting data." Shire U.S., Inc. v. Barr Labs., Inc., 329 F.3d 348, 352 (3d Cir. 2003). A bankruptcy court's discretionary determinations will be overturned only in cases of abuse of discretion, United Healthcare, 396 F.3d at 249, meaning that the determination was "arbitrary, irrational, or contrary to law." Borges v. Gonzales, 402 F.3d 398, 404 (3d Cir. 2005) (applying abuse of discretion standard in an immigration case).

**B. Treatment of Motion Below**

Amboy contends that the Bankruptcy Court erred by treating Appellant's motion as a request for reconsideration under Bankruptcy Rule 3008 and 11 U.S.C. § 502(j) instead of a motion for relief pursuant to Bankruptcy Rule 9094 and Federal Rule of Civil Procedure 60(b). That argument ignores the "ancient and elementary power of a bankruptcy court to reconsider any of its orders." Brielle Assocs. v. Graziano, 685 F.2d 109, 110 (3d Cir. 1982). Such reconsideration may be granted at any time prior to the closing of the estate, In re Ko-Ed Tavern, 129 F.2d 806, 811 (3d Cir. 1942), and may be awarded either on petition by an interested party or of a bankruptcy court's own volition. See 11 U.S.C. § 105(a) ("No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement orders or rules, or to prevent an abuse of process."); In re Busy Beaver

8

Bldg. Ctrs., Inc., 19 F.3d 833, 841 (3d Cir. 1994).

In light of the broad discretion granted by the foregoing statutory and case law – which allows bankruptcy judges to reconsider a prior order for any reason and at any time prior to the closing of the estate – it is clear that the Bankruptcy Court did not abuse its discretion in recharacterizing Appellant's motion for relief as a request for reconsideration. Therefore, Amboy's argument that the claim was time barred is meritless and must be rejected.

**C. Interpretation of Note and Guaranty**

"[C]ontract construction – the determination of the legal relations of the parties to the contract – is a question of law." TracindaCorp. v. DaimlerChrysler AG, 503 F.2d 212, 229 (3d. Cir. 2007) (internal citations and quotations omitted). The Bankruptcy Court made such a determination by holding that the terms of the Note rendered Appellant responsible for legal fees arising out of actions undertaken to enforce the Guaranty, even though she was not a party to the latter agreement. Therefore, the Bankruptcy Court's interpretation of the Note and Guaranty is subject to de novo review. United Healthcare, 396 F.3d at 249.

Contracts should be construed according to the plain and ordinary meaning of their terms. See, e.g. Bergholm v. Peoria Life Ins. Co., 284 U.S. 489, 492 (1932); Imperial Life Ins. Co. v. Coos County, 151 U.S. 452, 463 (1894); J.C. Penney Life Ins. Co. v. Pilosi, 393 F.3d 356, 364 (3d Cir. 2004). "Clear contractual terms that are capable of one reasonable interpretation must be given effect without reference to matters outside the contract." Bohler-Uddeholm, Inc. v. Ellwood Group, 247 F.3d 79, 93 (3d Cir. 2001) (internal quotations and citations omitted). Thus, the court must give force to the intent of the parties by interpreting any agreement between Appellant and Amboy according to the plain usage of its terms. Gleason v. Nw. Mortgage, Inc.,

9

243 F.3d 130, 138 (3d Cir. 2001).

When determining the rights and duties granted by an agreement, "[i]t goes without saying that a contract cannot bind a nonparty." E.E.O.C. v. Waffle House, 534 U.S. 279, 294 (2002); Hay Group v. E.B.S. Acquisition Group, 360 F.3d 404, 406 (3d Cir. 2004) ("parties to a contract cannot bind nonparties."). Appellant was not a party to the Guaranty. Therefore, Appellant was required to reimburse Amboy for fees arising out of litigation undertaken to enforce the Guaranty only if the plain meaning of the terms of the Note or the modifications thereto demonstrates that she agreed to such a requirement.

On examination of the Note and its modifications, the court finds no evidence that Appellant agreed to reimburse Amboy for attorneys' fees accrued in enforcing the Guaranty. The Note contains only one passage pertaining to fees, which limits Appellant's responsibility to "costs and expenses [incurred] in enforcing this Note," including "reasonable attorneys' fees." (Appellee Br., Ex. A ¶ 7(e).) (emphasis added). It makes no reference to attorneys' fees for litigation brought against Levine. Indeed, the inclusion of such a provision would have been impossible because – as Amboy acknowledged in its brief to this court – the Note was executed in 1987, thirteen years before the Guaranty. See (Appellee Br. 44.)

The third modification to the Note, which was executed at the same time as Levine's Guaranty, is similarly devoid of any indication that Appellant was responsible for attorneys' fees arising out of litigation between Levine and Amboy. That document states that "[i]n order to secure payment of the foregoing sums, Dr. Benjamin Levine agrees to execute simultaneously herewith a personal guaranty ... of all the Borrowers' obligations as set forth more fully herein," but does not include any provision allocating liability in the event of a breach and makes no other

reference to the Guaranty. (Appellee Br., Ex. K ¶ 5.) As the party responsible for drafting the language of the modification, Amboy could have easily included a provision incorporating the Guaranty and requiring Appellant to bear the cost of litigation against Levine. See Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 62 (1995) (when interpreting the terms of a contract, "a court should construe ambiguous language against the interest of the party that drafted it."). Having failed to do so, the bank may not assert a claim for those fees against Appellant.

The court's judgment on this point is supported by Amboy's own arguments. In its brief, the bank contends that Appellant, in arguing that the terms of the Guaranty limited her liability to 15 percent of the principle of the debt, was "attempting to exchange the terms of two separate and distinct legal documents" and "transpose the terms of the Guarantee onto the Note." (Appellee Br. 44.) The bank commits the converse error: in seeking to recover against Appellant for fees accrued while litigating against Levine, Amboy attempts to transpose the provision of the Guaranty relating to reimbursement for actions undertaken to enforce that agreement onto the Note, which is a legally separate contract.

Since Appellant was not a party to the Guaranty and the unambiguous terms of the Note do not require her to bear the expense of litigation between Amboy and Levine, the Bankruptcy Court erred as a matter of law in awarding attorneys' fees for litigation brought to enforce the Guaranty. That award will be reversed, and the case remanded so that the Bankruptcy Court can decide the proper fee allocation.

**D. Foreclosure First Rule**

Because the ruling below is reversed on the grounds that the terms of the Note did not

obligate Appellant to reimburse Amboy for attorneys fees relating to litigation against Levine, the question of whether the bank violated New Jersey's Foreclosure First statute by instituting that litigation is moot. The court therefore declines to rule on the propriety of Amboy's actions as they relate to the Foreclosure First rule.

### III.  CONCLUSION

For all the foregoing reasons, the judgment of the Bankruptcy Court awarding fees for litigation between Amboy and Levine is reversed. The case is remanded for determination of the proper fee allocation.

The court will enter an order implementing this decision.

    **s/ Dickinson R. Debevoise**
DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated: October 23, 2008